IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

UNITED STATES OF AMERICA,       *

vs.                             *

THOMAS H. SACHY,                *        CASE NO. 5:18-CR-48 (CDL)

  Defendant.             *

_____

O R D E R

Defendant asks for a mulligan.[1]  Unlike the Rules of Golf, the law does sometimes provide for a "do-over," but not under the circumstances presented here.  As explained in the remainder of this order, Defendant's motion to withdraw his guilty plea (ECF No. 297) is denied.

BACKGROUND

Defendant, a medical doctor, was charged with conspiracy to distribute and dispense controlled substances, two counts of unlawful dispensation and distribution of controlled substances resulting in death and serious bodily injury, unlawful dispensation and distribution of controlled substances,

---

[1] A "mulligan," typically associated with the game of golf, is an informal second chance to perform an action, usually after the first chance went wrong through bad luck or blunder. The origin of the term "mulligan" appears to arise from the surname of a gentleman who was allowed informally to replay a stroke in golf, contrary to the formal rules of golf. Interestingly, several different stories exist as to when (and which) Mr. Mulligan first took advantage of this exception to the rules. *United States Golf Association--Frequently Asked Questions,* https://www.usga.org/history/faq--golf-history-questions-232994f0.html (last visited 5/9/2022).

maintaining a drug involved premises, and a money laundering conspiracy. If convicted on these counts, Defendant faced a possible sentence of 25 years to life imprisonment. Represented by well-experienced counsel, Defendant entered a guilty plea on the first day of his trial to count four of the indictment, which charged him with unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Before accepting the guilty plea, the district judge conducted a model Rule 11 colloquy that established Defendant's guilty plea to be a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Plea Hr'g Tr. 3:2-16:14, 22:14-23 (June 21, 2021), ECF No. 308.

Seven and a half months after the entry of the guilty plea, Defendant, who had retained new counsel by then, filed a motion to withdraw his plea, claiming that his prior counsel was ineffective and that most of the answers Defendant provided under oath during the plea colloquy were in fact false. Mot. to Withdraw Guilty Plea, ECF No. 297. At the hearing on his motion to withdraw his guilty plea, Defendant and his new counsel suggested that Defendant thought he was going to receive a sentence of time served and be allowed to go home on the day of his plea based upon alleged representations from his then-lawyer regarding an off-hand comment made by the judge assigned to the

case at the time. *E.g.*, Mot. to Withdraw Guilty Plea Hr'g Tr. 13:9-14:13, ECF No. 317. When he was instead taken into custody pending his sentencing hearing, Defendant came to regret his decision to plead guilty. After the hearing on the motion to withdraw his plea and out of an abundance of caution, the judge who accepted the plea stepped aside, and the case was reassigned to the undersigned. In a text order, the Court informed the parties that they had seven days to supplement the record with regard to the motion to withdraw the guilty plea. Text Order (Mar. 28, 2022), ECF No. 316. One day after the supplementation deadline, Defendant's counsel filed a motion to be allowed to file a tardy supplemental brief. The Court granted that motion and set April 12, 2022 as the deadline for Defendant's supplemental brief, with a reply deadline for the Government of fourteen days after service of Defendant's supplemental brief. Text Order (Apr. 6, 2022), ECF No. 319. Defendant filed a supplemental brief, the Government declined to file a supplemental brief, and Defendant's motion to withdraw his guilty plea is now ripe for ruling.

DISCUSSION

Like the Rules of Golf, the law establishes strict parameters for how matters shall proceed. Unlike a friendly weekend game, however, the judge generally cannot make exceptions simply based upon the judge's subjective sense of

3

grace.   Routinely  awarding  mulligans  would  make  a  mockery  of  the
law.   For  Defendant  to  obtain  a  "do-over"  under  the  law,  he  must
be  entitled  to  it  based  upon  well-established  legal  principles.[2]

The  underlying  standard  for  a  legal  mulligan  in  the  guilty
plea  context  seems  at  first  glance  about  as  subjective  as  giving
your  golf  buddy  a  second  chance  on  the  first  tee  on  Saturday
morning.   The  Federal  Rules  of  Criminal  Procedure  permit  a
defendant  to  withdraw  his  guilty  plea  after  the  court  accepts
the  plea  but  prior  to  sentencing  if  Defendant  can  establish  a
"fair  and  just"  reason  for  doing  so.   Fed.  R.  Crim.  P.
11(d)(2)(B).   But  to  prevent  this  "fair  and  just"  determination
from  being  arbitrary,  the  law  tightens  this  standard  a  bit  by
providing  an  analytical  framework  that  focuses  on  the  following
pertinent  factors:  (1)  whether  close  assistance  of  counsel  was
available  to  the  defendant  at  the  time  he  made  his  plea;  (2)
whether  the  plea  was  knowing  and  voluntary;  (3)  whether  judicial
resources  would  be  conserved;  and  (4)  whether  the  government
would  be  prejudiced  if  the  defendant  were  allowed  to  withdraw
his  plea.   *United States v. Cesal,*  391  F.3d  1172,  1179  (11th
Cir.  2004)  (per  curiam),  *judgment vacated on other grounds by*
*Cesal v. United States*,  545  U.S.  1101  (2005)  (remanding  for
further  consideration  in  light  of  *United States v. Booker*,  543

---

[2] Although  the  practice  of  providing  mulligans  in  the  recreational
setting  is  prevalent,  golf  purists  find  the  practice  inconsistent  with
the  letter  of  the  rules,  which  it  clearly  is,  and  contrary  to  the
spirit  of  the  rules,  which  depends  on  the  perspective  of  the  golfer.

U.S. 220 (2005)).  Having carefully reviewed the record in light
of these factors, the Court finds that Defendant has failed to
show that fair and just reasons exist for allowing him to
withdraw his guilty plea.

First, although Defendant and his current counsel cast
blame upon Defendant's prior counsel, these arguments represent
little more than second-guessing of tactical and strategic
decisions that were well within the realm of what reasonable
lawyers would do under similar circumstances.  The Court finds
from the present record that counsel provided effective
representation and kept Defendant adequately informed as to the
proceedings and as to the consequences of entering a plea of
guilty.  Contrary to Defendant's speculation, Defendant's
counsel was well prepared to try his case starting on the day
that Defendant's trial was scheduled to begin.  The record does
not support Defendant's suggestion that he was coerced into
pleading guilty because his counsel was not prepared for trial.
The Court also rejects any suggestion that Defendant was misled
in any way.  Defendant had reasonably close contact with counsel
throughout the proceedings and was adequately counseled
regarding his guilty plea.  Counsel fully communicated to
Defendant prior to his plea that there were no guarantees
regarding the sentence he would receive or whether he would
remain in custody pending sentencing.  Moreover, the plea deal

that Defendant's counsel was able to negotiate with the Government, which placed a cap of 97 months on his sentence when he faced 25 years to life had he lost at trial, further demonstrates that Defendant's counsel was fully engaged and that he kept Defendant, who was an astute professional, adequately informed.   Defendant clearly had close assistance of counsel during the proceedings.   This factor weighs heavily against allowing Defendant to withdraw his guilty plea.

Second, the record establishes that Defendant's plea of guilty was knowing and voluntary.   The thorough Rule 11 colloquy between the Court and Defendant was a model of clarity.   It allowed the Court to clearly ascertain whether Defendant's plea was a knowing and voluntary one entered into after being fully apprised of all of his fundamental rights.   Notwithstanding his hope that he was going to be able to enter an *Alford* plea and that he may receive a sentence of time served, Defendant was clearly advised by the Court that the judge would not accept an *Alford* plea and that there were no guarantees as to what Defendant's sentence would be.   Plea Hr'g Tr. 18:24-19:20 (rejecting request for *Alford* plea); *id.* at 14:12-15:10 (Court explaining that sentence would be subject to a 97-month cap but that the sentence imposed may be different from estimate given by Defendant's lawyer); *id.* at 22:14-23 (Defendant entering guilty plea following rejection of *Alford* plea and explanation

that the sentence imposed may be different from a lawyer's estimate).

After informing the Court that he understood the Court's explanation, Defendant nevertheless chose voluntarily to plead guilty pursuant to the plea agreement with the Government. It is significant that Defendant's responses to the Court's questions, which allowed the Court to determine he was competent, that his plea was voluntary, and that he understood the consequences of pleading guilty, were made under oath. Although Defendant now disavows those responses, in essence admitting to perjury, the Court does not find his change of heart demonstrates that he was being untruthful at the plea hearing. His responses then were consistent with someone who understood the Court's questions and answered them truthfully. And the circumstances surrounding his plea deal add credibility to his statements then that he knew what he was doing. As mentioned previously, his plea agreement with the Government removed some of the more serious counts and had the effect of reducing the advisory guideline range so that any sentence would be capped at 97 months, instead of the possible 25 years to life that he faced if he was found guilty at trial. While Defendant may have developed second thoughts several months later, he has failed to establish that on the day he pled guilty he did so involuntarily or without a full understanding of the

consequences.   In   fact,   the   record   establishes   just   the opposite.   This plea by a relatively sophisticated defendant was clearly voluntary and with full knowledge of the consequences.[3]

With   these   two   factors   weighing   heavily   against   allowing withdrawal of the guilty plea, the Court's inquiry likely needs to proceed no further.   But for the sake of completeness, the Court also finds that the other factors weigh against allowing withdrawal.   Judicial   resources   would   not   be   conserved   by allowing a withdrawal of the plea.   Similarly, withdrawal of the plea would prejudice the Government.   Defendant pled guilty on the   first   day   of   his   trial.   The   Government   had   gone   to substantial expense and preparation to get ready for what was expected to be a multiple week, complex jury trial.   Members of the   community   had   been   summonsed   for   jury   duty.   The   Court's docket had been cleared of other matters, and the schedules of all personnel involved in the trial had been arranged so that other   matters   were   put   on   hold   or   otherwise   rescheduled. Allowing the withdrawal of the guilty plea several months after the   day   it   was   made   would   require   the   trial   machine   to   be restarted,   obviously   resulting   in   duplication   and

---

[3] At the hearing on the motion to withdraw the guilty plea, counsel for Defendant raised for the first time an objection to the plea based upon the assertion that it was not supported by an independent basis in fact.   Having reviewed the plea colloquy, the Court is convinced that Defendant admitted to sufficient facts during the colloquy to support a finding that the essential elements of the offense to which he pled guilty were established.   *See e.g.,* Plea Hr'g Tr. 12:1-13:18.

inefficiencies.   Starting over in this manner would require the unreasonable expenditure of additional resources and would likely prejudice the Government.   While these factors may not weigh as heavily in the Court's calculus, they do weigh against allowing withdrawal of Defendant's plea.

Neither fair nor just reasons exist for allowing Defendant to withdraw his guilty plea.   He apparently thought that he was going to leave the courthouse a free man immediately upon entering his plea.   But this subjective belief does not square with the objective record.   The plea agreement clearly gives no such indication.   The plea colloquy likewise makes it clear that the Court had not decided what his sentence would be, and in fact, could not make that determination until after a presentence report was prepared.   And even his counsel, whose testimony the Court found to be credible, emphasized to him that there were no guarantees.   Although his counsel relayed the judge's off-hand comment, "sounds like time-served," to Defendant, counsel made clear that he could not count on this comment as a reliable prediction of what his ultimate sentence may be.   Nevertheless, Defendant, perhaps filled with hope, voluntarily pled guilty knowing only that a possibility existed that he may get a sentence well below the guidelines range. Although he has not been sentenced yet, his hopes of being released on the day he pled guilty were soon dashed.   But dashed

hope does not amount to a fair and just reason to allow withdrawal of a guilty plea. If it did, guilty plea mulligans would be as prevalent in federal district courts as they are on Saturday morning on golf courses throughout the country where recreational players often ignore the rules.

Perhaps recognizing the uphill challenge for withdrawal, Defendant's counsel filed a last-minute supplemental brief that does not supplement her prior motion but in fact adds an entirely new argument. The Court is inclined to disallow it as having been waived. But given Defendant's propensity to change counsel and blame them for ineffectiveness, the Court finds it prudent to address the argument now rather than later. Defendant now maintains that Defendant's plea should be vacated pursuant to *United States v. Davila,* 569 U.S. 597 (2013) based upon the trial judge's alleged violation of Federal Rule of Criminal Procedure 11(c)(1), which states that the judge must not participate in plea agreement negotiations between Defendant and the Government.

For purposes of this Order, the Court assumes that the trial judge who accepted Defendant's guilty plea was informed of the status of the plea negotiations. Remaining informed was particularly appropriate here given that the jury trial was scheduled to begin the same day that these last-minute negotiations started. The trial judge had to plan for jurors

and other court personnel if the negotiations fell through and the trial was to resume.  Thus, there was nothing untoward about staying informed regarding the status of the negotiations.  As to the ex parte nature of the status report, the record shows that an assistant U.S. Attorney asked Defendant's counsel to report to the trial judge on the status of the plea negotiations.  Mot. to Withdraw Guilty Plea Hr'g Tr. 73:7-15.  Two of Defendant's lawyers and counsel for another Defendant who would be affected by the plea agreement were present with the judge for the status report.  There is no evidence that Government's counsel ever had any type of ex parte conference with the judge.  As to the nature of the status report, Defendant's counsel informed the judge that the Government had agreed to dismiss all counts except Count IV and cap Defendant's sentence at 97 months. According to Defendant's counsel, the judge responded cryptically, "[T]hat's a good deal.  It sounds like time-served to me."  Mot. to Withdraw Guilty Plea Hr'g Tr. 73:20-22.  Defendant was not present when the judge made the off-hand comment about "time-served."  He relied entirely upon his counsel's report of the comment.

No other discussions with the judge occurred until the Rule 11 colloquy in the courtroom after Defendant decided to plead guilty.  Defendant's counsel did inform Defendant of the judge's comment but made clear to Defendant that there was no guarantee

he would receive a time-served sentence. In a recording Defendant took of his conversations with his lawyers regarding his sentencing guidelines range, a lawyer said, "If it's 20 years, you're gonna go to trial." Defendant responded, "If it's more than time served, I'm going to trial." The lawyer responded, "It's gonna be more than time served." Minute Entry Ex. Recording 2 at 00:16:35 to 00:16:43, ECF No. 310. Then, the lawyer said to Defendant, "I told you, when we were sitting in the judge's office, the judge said 'sounds like time served to me.' But he can't guarantee that, I can't guarantee that." *Id.* at 00:17:18 to 00:17:30. Later in the day, while discussing the presentence investigation process, Defendant asked the lawyer, "You're not a mind reader, but you feel you got a message today, though, right? It's good enough for you to shake your head like this. [Pause] That means a lot. I know it's not 100%. I know you can't predict the future, no one can. But you're saying Tom, it looks that way." The lawyer responded, "It looks that way, but there's no guarantee. He could change his mind." *Id.* at 01:39:56 to 01:40:37.

This absence of a guarantee was reiterated by the judge during the Rule 11 plea colloquy. And as previously noted, Defendant was not present at the time of the status report where the off-hand comment was made. Thus, there was never any direct representation by the Court to Defendant until the judge

addressed Defendant in open court during the plea colloquy at which time the judge clearly explained that his sentence would be decided after a presentence investigation had been completed and a presentence report submitted to him.

The record makes clear that the trial judge was simply provided with a status report so that he could manage for the possible trial, which was to begin that very day and for which jurors were already assembled at the courthouse awaiting voir dire.  The trial judge did not insert himself into the plea negotiations between the Defendant's counsel and the Government. And his stray limited remark certainly does not rise to the level of coercion or prejudice as contemplated by *Davila.*  No reasonable person could have relied upon it, particularly given the explanation provided to Defendant by his counsel and the warnings provided by the judge during the plea colloquy.

In *United States v. Davila,* the Supreme Court, citing Federal Rule of Criminal Procedure 11(h), held that a violation of Federal Rule of Criminal Procedure 11(c) does not require vacatur of the plea if the record shows no prejudice to Defendant's decision to plead guilty.  569 U.S. at 600-01.  As indicated previously, the trial judge here did not exhort the Defendant to plead guilty.  He did not even make that suggestion to the Defendant.  The judge expressed no desire that Defendant plead guilty.  And the judge made no representations that

indicated he would be unhappy if the case proceeded to a jury trial.  Defendant's counsel simply reported to Defendant an off-hand comment by the judge accompanied by the clear caveat that the comment certainly could not be relied upon.  Even construing the evidence in favor of Defendant, the best he has is a representation, which standing alone could lead one to conclude that the trial judge *may* sentence him to time served.  But when viewed in the context of the other circumstances, which establish unequivocally that he was told by both his counsel and the trial judge that there was no guarantee as to what his sentence would be, this representation certainly could not be reasonably relied upon.  When all of the circumstances are considered (instead of taking one off-hand remark out of context), no prejudice has been shown, assuming that Rule 11(c) even applies to this off-hand remark.  Defendant's plea cannot be vacated based upon an alleged violation of Rule 11(c)(1).

CONCLUSION

Just as the golfer must (with limited exceptions) play the course as he finds it and the ball as it lies, Defendant must accept the consequences of his actions.[4]  Having entered a knowing and voluntary plea with the benefit of counsel, Defendant does not get a second shot under the circumstances

---

[4] Rule 1, Rules of Golf (jointly written and administered by the United States Golf Association and The R&A).

presented here.  Defendant's motion to withdraw his guilty plea

(ECF No. 297) is denied.

IT IS SO ORDERED, this 9th day of May, 2022.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA