IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No. 5:18-cr-48-CDL-CHW-1 |
| THOMAS H. SACHY, | : |
| Defendant. | : |

### ORDER ON MOTION FOR RETURN OF PROPERTY

Defendant Thomas H. Sachy has filed a "Motion for Return of Property Pursuant to Rule 41(g) or in the Alternative for a Hearing Pursuant to *Luis v United States*" (Doc. 349), in which he moves for a return of some or all of the assets previously seized by the Government pursuant to seizure warrants. On June 26, June 29, and July 13, 2018, the Government obtained seizure warrants for twelve bank accounts, upon a showing of probable cause to believe that the assets in the accounts would be subject to seizure and that seizure of the assets was necessary to assure the availability of the property for forfeiture, pursuant to 21 U.S.C. § 853(f). Upon execution of those warrants, the Government seized funds from eight of the twelve accounts, totaling $1,453,991.03. Bill of Particulars, Doc. 104, pp. 5-6. Defendant asserts that he needs the seized funds to pay for counsel of his choice and further contends that the Government cannot trace all of the seized funds to the illegal activity alleged in the indictment. For the reasons set forth below, Defendant's motion is **DENIED**.

1

Rule 41(g) is not the appropriate avenue for release of the funds in this case prior to trial. The funds at issue were seized pursuant to a notice of forfeiture in the indictment, citing 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1). (Doc. 1, p. 13). Section 853 of Title 21 provides that any person convicted of a violation of the Controlled Substances Act shall forfeit to the Government

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; [and]
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

18 U.S.C. § 853(a). Title to such property vests in the Government "upon commission of the act giving rise to forfeiture." 18 U.S.C. § 853(c). To protect potentially forfeitable assets from dissolution prior to trial,

> The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

18 U.S.C. § 853(f). The seizure warrants in this case included a finding under § 853(f) that an order under § 853(e) would not be sufficient to ensure the availability of the property for forfeiture. Proceedings for the final disposition of funds seized by warrant under

Section 853(f) are governed by Rule 32.2 of the Federal Rules of Criminal Procedure and normally take place following trial.

Defendant previously filed a "Motion for Release of Funds for Use in Defense of Charges" (Doc. 132), in which Defendant sought the release of $100,000 in funds from three of the seized accounts to pay for expert witnesses to assist in his defense. The Court denied this motion, noting that the relief Defendant requested is not authorized under the 18 U.S.C. § 853, which authorizes the Government to obtain an order to freeze or seize a defendant's assets prior to trial upon "a finding of probable cause to believe that the property will ultimately be proved forfeitable." *United States v. Monsanto*, 491 U.S. 600, 615 (1989). That determination of probable cause was based upon the Grand Jury's entry of an indictment combined with the Court's further finding, upon issuing the seizure warrants, that "the property at issue has the requisite connection to that crime." *Kaley v. United States*, 571 U.S. 320, 323-34 (2014). This standard has been held to apply "even when a defendant seeks to use the disputed property to pay for a lawyer." *Id*. at 322. As the Supreme Court has reasoned, "if the Government may, post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is adequately established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial." *Monsanto*, 491 U.S. at 616.

As an alternative to a hearing under Rule 41(g), Defendant requests a hearing pursuant to *Luis v. United States*, 578 U.S. 5 (2016). In *Luis*, the Supreme Court held that a defendant "has a Sixth Amendment right to use her own 'innocent' property to pay a

reasonable fee for the assistance of counsel." *Id*. at 23. The Court noted that where a defendant's Sixth Amendment right to hire counsel of choice is at issue, a hearing may be necessary to determine whether seized assets are "tainted," that is, properly traceable to the conduct charged in the indictment. *Luis*, 578 U.S. at 23. This hearing is commonly referred to as a *Monsanto* hearing, after *United States v. Monsanto*, 491 U.S. 600 (1989). In *Kaley*, cited in *Luis*, the Court observed that "since *Monsanto*, the lower courts have generally provided a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer." *Kaley*, 571 U.S. at 324.

To establish the need for a pretrial *Monsanto* hearing, district courts across the country have held that defendants must satisfy the "*Jones-Farmer* Rule," named for the decisions in *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998) and *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). The *Jones-Farmer* Rule sets out a two-step analysis. As a threshold showing, "a defendant must 'show a bona fide need to utilize [seized] assets … to conduct his defense' in order to be entitled to a hearing." *Farmer*, 274 F.3d at 804 (quoting *United States v. Kirschenbaum*, 156 F.3d 784 792 (7th Cir. 1998)). If the defendant passes this threshold, the defendant must then make a *prima facie* showing that some portion of the assets is not traceable to the commission of the offense alleged. *Jones*, 160 F.3d at 647.

At least one district court in the Eleventh Circuit has applied the *Jones-Farmer* Rule. In *United States v. Hernandez-Gonzales*, 2017 WL 2954676 (S.D.Fla., June 26, 2017), a magistrate judge in the Southern District of Florida determined that a defendant had failed

4

to "provide more than mere conclusory evidence that he lacks sufficient funds to retain his counsel of choice." *Id.* at *4. As to the evidence the Defendant did submit, the court observed,

> the Defendant has three lawyers currently handling his criminal case and has failed to provide any proof of his net worth to the Court. Defendant has not proffered any verified financial affidavits for himself in support of his Motion and no banking statements that show a lack of available assets. Complete financial disclosure requires that the Defendant identify his assets, liabilities, sources of income, net worth, whether he has access to financial accounts, and the expected costs of his defense team.
>
> *Id.*

In the absence of such specific evidence, the court held there was "simply no basis to find that Defendant has any financial need to warrant an evidentiary hearing." *Id.*

In this case as well, Defendant has failed to meet the threshold requirement. In support of his motion, Defendant has submitted a Form CJA-23 financial affidavit in which he asserts that he has no income and no assets except for $32 in a savings or checking account, alongside monthly expenses in the amount of $1,671.54 and total debts of $1,871.96. This affidavit is as conclusory as the evidence submitted in *Hernandez-Gonzalez*. It is also of limited credibility, given evidence submitted at Defendant's detention hearings showing that prior to his arrest Defendant instructed family members to conceal assets (Doc. 55-4) and that Defendant has previously been held in contempt by the Superior Court of Jones County for attempting to conceal over $930,000 in assets during a divorce proceeding. (Docs. 77-11, 77-16).

More significantly, Defendant's conclusory allegation that he is unable to retain counsel of his choice is contradicted by the fact that Defendant has retained counsel of his choice. In fact, Defendant has retained seven different attorneys during the course of this litigation. At arraignment, Defendant was represented by a personal attorney who was not experienced representing criminal defendants in federal court. Only July 2, 2018, Defendant retained two prominent Macon criminal defense attorneys to represent him. (Docs. 44, 45). These two attorneys continued to represent him until September 10, 2018, when Defendant terminated their representation. (Doc. 89). Between September 10, 2018, and April 29, 2019, Defendant was again represented by his personal attorney. On April 29, 2019, the Court entered an order disqualifying Defendant's counsel (Doc. 160), and an attorney from the Court's CJA panel was appointed to represent Defendant. (Doc. 161). Less than two weeks later, on May 10, 2019, Defendant retained an attorney from Atlanta with a statewide reputation. (Doc. 164). On June 6, 2021, with trial scheduled to begin on June 21, 2021,[1] Defendant retained another prominent Atlanta attorney to assist in his defense. (Doc. 251). These two Atlanta attorneys continued to represent Defendant until February 8, 2022, when Defendant filed a motion to substitute counsel, notifying the Court that he had retained present counsel, Ronald W. Chapman, II, from Troy, Michigan, to represent him. (Doc. 295). On February 12, 2022, Defendant retained a second attorney, Meggan Sullivan of Nashville, Tennessee, to represent him. (Doc. 303). These two

---

[1] On the date of trial, Defendant entered a guilty plea. (Doc. 271), which included an agreement to waive claims as to $437,485.86 of the seized funds. (Doc. 269).

attorneys successfully pursued a motion to recuse the trial judge (Docs. 313, 315) and a motion to withdraw Defendant's plea of guilty. (Docs. 297, 330, 337), and they continue to represent Defendant at this time.

Trial has been scheduled to being on January 30, 2023. (Doc. 337). The Court has denied Defendant's motion to continue trial, noting that "it is unlikely that current counsel will be permitted to withdraw in light of the Court's local rules and other applicable law." (Doc. 354). This Court's Local Rule 57(D)(1) requires retained criminal defense attorney to "make fee and other necessary financial arrangements satisfactory to themselves and sufficient to provide for representation of the client until the conclusion of the case." The case is not considered concluded until the exhaustion of a direct appeal. Local Rule 57(D)(2) further provides that retained attorneys "may not, except in extraordinary circumstances, withdraw from the representation of a client because of the client's failure to pay a fee or otherwise comply with the financial agreement with the attorney, after fourteen (14) business days from arraignment."

The Sixth Amendment to the United States Constitution has been held to guarantee to criminal defendants the right to retain counsel of their choice, if they are able to do so. The record in this case shows that despite the seizure of funds, Defendant has continued to have access to financial resources sufficient to retain seven different attorneys, including two prominent and highly qualified attorneys from the Macon area, two prominent and highly qualified attorneys from the Atlanta area, and two attorneys from other states, Tennessee and Michigan. Each and every one of these attorneys would have been obligated

to continue representing Defendant through trial and direct appeal, had he wished to continue retaining them. His current attorneys remain obligated to represent him. No court has held that the Sixth Amendment guarantees a right to an infinite number of retained attorneys, and nothing in *Luis* or *Monsanto* can be construed to hold that a defendant is entitled to a pretrial release of seized assets to allow his retained attorneys to renegotiate a fee they had already agreed to accept.

Because Defendant has not satisfied the first, threshold step of the *Jones-Farmer* Rule by showing a bona fide need to use seized assets to retain counsel of his choice, the Court need not presently reach the second issue of traceability, an issue ordinary reserved for post-trial proceedings under Rule 32.2.  Accordingly, the Defendant's Motion for Return of Property (Doc. 349) is **DENIED**.

**SO ORDERED**, this the 23rd day of November, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge